# EXHIBIT 1

**Query     Reports     Utilities     Help     Log Out**

Ⓡ Create an Alert for This Case on RECAP

CV

# U.S. District Court
## U.S. District of Minnesota (DMN)
## CIVIL DOCKET FOR CASE #: 0:20-cv-01345-JRT-ECW

BAM Navigation, LLC v. Wells Fargo & Co. et al
Assigned to: Chief Judge John R. Tunheim
Referred to: Magistrate Judge Elizabeth Cowan Wright
Demand: $5,000,000
Cause: 28:1332 Diversity

Date Filed: 06/11/2020
Jury Demand: Plaintiff
Nature of Suit: 370 Fraud
Jurisdiction: Diversity

**Plaintiff**

**BAM Navigation, LLC**                                represented by   **Bethany Turke**
Wexler Wallace LLP
55 West Monroe St
Ste 3300
Chicago, IL 60603
312-346-2222
Fax: 312-346-0022
Email: brt@wexlerwallace.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Gustafson**
Gustafson Gluek PLLC
120 South 6th Street
Suite 2600
Mpls, MN 55402
612-333-8844
Fax: 612-339-6622
Email: dgustafson@gustafsongluek.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth A Wexler**
Wexler Wallace LLP
55 W. Monroe Street
Suite 3300
Chicago, IL 60603
312-346-2222
Fax: 312-346-0022
Email: kaw@wexlerwallace.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mickey L Stevens**
Gustafson Gluek PLLC
120 South 6th Street
Suite 2600
Minneapolis, MN 55402
612-333-8844
Fax: 612-339-6622
Email: mstevens@gustafsongluek.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Howard**
Saltz, Mongeluzzi, Barrett & Bendesky, P.C.
1650 Market Street
52nd Floor
Philadelphia, PA 19103
215-575-3895
Email: phoward@smbb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raina Borrelli**
Gustafson Gluek PLLC
120 South 6th Street
Suite 2600
Minneapolis, MN 55402
612-333-8844
Email: rborrelli@gustafsongluek.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Simon Bahne Paris**
Saltz Mongeluzzi Barrett Bendesky, PC
120 Gibraltar Road
Suite 218
Horsham, PA 19044
215-575-3986
Email: sparis@smbb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Wells Fargo & Co.**      represented by   **Amy L Schwartz**
Ballard Spahr LLP
80 South 8th Street
Ste 2000
Minneapolis, MN 55402
612-371-3211
Fax: 612-371-3207

Email: schwartza@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Thomson**
Ballard Spahr LLP
80 South 8th Street
Suite 2000
Minneapolis, MN 55402
612-370-3211
Email: thomsonr@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wells Fargo Bank N.A.**       represented by **Amy L Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard T Thomson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/11/2020 | 1 R | COMPLAINT against Wells Fargo & Co., Wells Fargo Bank N.A. (filing fee $ 400, receipt number AMNDC-7791663) filed by BAM Navigation, LLC. Filer requests summons issued. (Attachments: # 1 Civil Cover Sheet) (Gustafson, Daniel) (Entered: 06/11/2020) |
| 06/11/2020 | 2 | RULE 7.1 DISCLOSURE STATEMENT. There is no parent corporation, publicly held corporation or wholly-owned subsidiary to report for Plaintiff BAM Navigation, LLC. (Gustafson, Daniel) (Entered: 06/11/2020) |
| 06/11/2020 | 3 | TEXT ONLY ENTRY: CLERK'S NOTICE OF INITIAL CASE ASSIGNMENT. Case assigned to Judge John R. Tunheim per 3rd/4th Master list, referred to Magistrate Judge Elizabeth Cowan Wright. Please use case number 20-cv-1345 JRT/ECW. (kt) (Entered: 06/11/2020) |
| 06/11/2020 | 4 | Summons Issued as to Wells Fargo & Co., Wells Fargo Bank N.A.. (kt) (Entered: 06/11/2020) |
| 06/11/2020 | 5 | (Text-Only): Notice re: Non-Admitted Attorney

We have received documents listing **Kenneth A. Wexler, Bethany R. Turke, Simon B. Paris, Patrick Howard** as counsel of record. If he or she wishes to be listed as an attorney of record in this case, he or she must be admitted to the bar of the U.S. District Court of Minnesota in accordance with Local Rule 83.5 (a), (b) and (c) or temporarily admitted pro hac vice in accordance with Local Rule 83.5 (d) or (e).

For more admissions information and forms, please see the Attorney Forms Section of the courts website at www.mnd.uscourts.gov/forms/all-forms. (kt) (Entered: 06/11/2020) |

| 06/11/2020 | 6 | MOTION for Admission Pro Hac Vice for Attorney Simon B. Paris. Filing fee $ 100, receipt number AMNDC-7793467 filed by BAM Navigation, LLC. (Borrelli, Raina) (Entered: 06/11/2020) |
|---|---|---|
| 06/11/2020 | 7 | MOTION for Admission Pro Hac Vice for Attorney Patrick Howard. Filing fee $ 100, receipt number AMNDC-7793484 filed by BAM Navigation, LLC. (Borrelli, Raina) (Entered: 06/11/2020) |
| 06/12/2020 | 8 | TEXT ONLY ENTRY: ORDER granting 6 Motion for Admission Pro Hac Vice of Attorney Simon Bahne Paris for BAM Navigation, LLC.; granting 7 Motion for Admission Pro Hac Vice of Attorney Patrick Howard for BAM Navigation, LLC. Approved by Magistrate Judge Elizabeth Cowan Wright on 6/12/2020. (JGK) (Entered: 06/12/2020) |
| 06/15/2020 | 9 | MOTION for Admission Pro Hac Vice for Attorney Kenneth A. Wexler. Filing fee $ 100, receipt number AMNDC-7799506 filed by BAM Navigation, LLC. (Borrelli, Raina) (Entered: 06/15/2020) |
| 06/15/2020 | 10 | MOTION for Admission Pro Hac Vice for Attorney Bethany R. Turke. Filing fee $ 100, receipt number AMNDC-7799532 filed by BAM Navigation, LLC. (Borrelli, Raina) (Entered: 06/15/2020) |
| 06/15/2020 | 11 | SUMMONS Returned Executed by BAM Navigation, LLC. Wells Fargo & Co. served on 6/15/2020, answer due 7/6/2020; Wells Fargo Bank N.A. served on 6/15/2020, answer due 7/6/2020. (Gustafson, Daniel) (Entered: 06/15/2020) |
| 06/17/2020 | 12 | TEXT ONLY ENTRY: ORDER granting 9 Motion for Admission Pro Hac Vice of Attorney Kenneth A Wexler for BAM Navigation, LLC; granting 10 Motion for Admission Pro Hac Vice of Attorney Bethany Turke for BAM Navigation, LLC. Approved by Magistrate Judge Elizabeth Cowan Wright on 6/17/2020. (NAH) (Entered: 06/17/2020) |
| 06/22/2020 | 13 | NOTICE of Appearance by Amy L Schwartz on behalf of Wells Fargo & Co., Wells Fargo Bank N.A.. (Schwartz, Amy) (Entered: 06/22/2020) |
| 06/22/2020 | 14 | NOTICE of Appearance by Richard T Thomson on behalf of Wells Fargo & Co., Wells Fargo Bank N.A.. (Thomson, Richard) (Entered: 06/22/2020) |
| 06/22/2020 | 15 | STIPULATION *TO EXTEND TIME TO ANSWER, PLEAD OR OTHEWISE RESPOND TO THE COMPLAINT* by Wells Fargo & Co., Wells Fargo Bank N.A.. (Schwartz, Amy) (Entered: 06/22/2020) |
| 06/22/2020 | 16 | PROPOSED ORDER TO JUDGE re ORDER GRANTING EXTENSION TO ANSWER, PLEAD, OR OTHERWISE RESPOND TO THE COMPLAINT. (Schwartz, Amy) (Entered: 06/22/2020) |

**PACER Service Center**

**Transaction Receipt**

06/23/2020 08:58:28

| PACER Login: | Tracgrill_53 | Client Code: | 6086-001 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 0:20-cv-01345-JRT-ECW |
| Billable Pages: | 3 | Cost: | 0.30 |

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BAM Navigation, LLC, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMAND** |
| WELLS FARGO & CO., WELLS FARGO BANK N.A., | |
| Defendants. | |

Plaintiff BAM Navigation, LLC ("BAM"), brings this class action complaint on behalf of itself and all others similarly situated (hereinafter "Plaintiff" against Defendants Wells Fargo & Co. and Wells Fargo Bank N.A. ("Defendants" or "Wells Fargo") to stop Defendants' unlawful conduct in connection with the Federal Paycheck Protection Program ("PPP") and obtain redress for Plaintiff and other persons and businesses injured by Defendants' conduct. Plaintiff alleges the following based upon its personal knowledge and upon information and belief, including investigation conducted by its attorneys.

## <u>INTRODUCTION</u>

1.     In connection with their administration and processing of loans under the PPP, Wells Fargo made false, misleading and deceptive material statements and omissions to Plaintiff and other small business owners who were in need of financial relief and assistance as a result of the COVID-19 pandemic that has wreaked havoc on the global economy.

2.     Wells Fargo, in violation of the Federal regulations governing PPP loan applications requiring that applications be processed on a first-come, first-served basis, processed PPP loan applications in a manner which prioritized applications for larger loan amounts over applications for smaller loan amounts and that prioritized applications from businesses with a pre-existing lending relationship with Wells Fargo without regard to the order in which they were submitted to Defendant, inconsistent with applicable regulations.

3.     Wells Fargo discriminated against Plaintiff and other PPP applicants, who they knew needed loans through the PPP funds (which Wells Fargo knew were limited) in order to continue operating their businesses, in order to maximize Defendants' own economic benefit through percentage-based commission fees on approved PPP loan applications (the "PPP loan processing scheme").

4.     Defendants' wrongdoing caused substantial injury to small businesses, including Plaintiff and Class members, as defined herein, who were unable to benefit from the PPP loan funds as a result of Defendants' conduct.

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction over this action because the parties are citizens of different states and the controversy exceeds the value of $75,000.

6.     This Court has personal jurisdiction over Defendants because they transact a substantial amount of business in this state and a substantial number of the events giving rise to the claims occurred in Minnesota.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

8.      Plaintiff BAM Navigation, LLC, is a Minnesota limited liability company with its principal place of business in St. Paul, Minnesota. BAM Navigation, LLC, is a small business that provides assistance to consumer goods companies in identifying and executing growth strategies. BAM Navigation, LLC, met the criteria for PPP funding eligibility, and made its single permitted PPP loan application with Wells Fargo in reliance on Defendants' false and deceptive advertising, marketing, and loan application processing representations.

9.      Defendant Wells Fargo & Co. is the parent company of all Wells Fargo entities. It is a Delaware corporation, and has its headquarters at 420 Montgomery Street in San Francisco, California. Through its subsidiaries, Wells Fargo & Co. conducts substantial business in this District.

10.      Defendant Wells Fargo Bank N.A. is the primary banking subsidiary of Wells Fargo & Co., and is headquartered at 101 North Phillips Avenue in Sioux Falls, South Dakota. Wells Fargo Bank N.A. conducts substantial business in this District.

## FACTUAL ALLEGATIONS

### I.    Paycheck Protection Program Loans

11.      The World Health Organization declared the COVID-19 outbreak a global pandemic on March 11, 2020. On March 13, 2020, Minnesota Governor Tim Walz issued

an executive order declaring a peacetime emergency in the State of Minnesota as a result of the COVID-19 outbreak.

12.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) was signed into law on March 27, 2020, in response to economic conditions resulting from the COVID-19.

13.     The CARES Act was intended to provide direct economic assistance to workers and businesses on a first-come, first served basis, and to preserve U.S. jobs.

14.     As part of the CARES Act, Congress appropriated $349 billion to the Small Business Administration ("SBA") for distribution under the Paycheck Protection Program ("PPP"), to allow small businesses to apply for loans to cover payroll and certain other costs. The purpose of PPP loans is to help small businesses keep their workforce employed during the COVID-19 crisis. The SBA incentivizes small businesses to do so by forgiving the PPP loan if all employees are kept on the payroll for eight weeks and the loan money is used for payroll, mortgage interest, or utilities.

15.     Under the CARES Act, the SBA has rulemaking authority regarding the administration and distribution of PPP loans. The SBA has issued a series of "PPP Interim Final Rules" and other guidance.

16.     On April 2, 2020, the SBA issued its first PPP Interim Final Rule,[1] which announced that Congress authorized $349 billion for the PPP in order to "provide relief to America's small businesses expeditiously." The April 2, 2020 Interim Final Rule

---

[1] https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf

announced that PPP loans would be available starting April 3, 2020, through June 30, 2020. This same rule also instructed that PPP funds were to be distributed "first-come, first-served."

17.　　Small businesses are eligible to apply for a loan through the PPP if they have been harmed by the COVID-19 pandemic between February 15, 2020 and June 30, 2020.

18.　　The SBA regulations provided for a "one loan per borrower limitation," and therefore PPP loan applicants submitted a single loan application through a single financial institution.

19.　　The SBA issued additional guidance stating that lenders were not required to verify the financial information provided by applicants on their PPP loan applications.

20.　　The SBA reported on April 16, 2020, that the $349 billion appropriated for PPP loans had been depleted, well before the June 30, 2020 deadline for PPP loan applications and before many small business owners' PPP loan applications were considered or submitted.

## II.　Discrimination Against Small Businesses In Favor of Larger Businesses

21.　　Upon information and belief, Wells Fargo received thousands of applications and prioritized loan applications for higher loan amounts submitted by larger businesses instead of processing applications on a "first-come, first-served" basis as set forth in the SBA's regulations.

22.　　Defendants had an incentive to prioritize applications for larger loan amounts over applications for smaller loan amounts due to the compensation structure enacted by the government. Defendants receive a commission of 5% on loans not greater than

$350,000, 3% on loans greater than $350,000 but less than $2 million, and 1% on loans greater than $2 million. These percentage commissions, along with the money earned as interest on the federally-backed loans, mean Defendants stand to receive a substantially greater amount of money the larger the PPP loan application processed by the bank is.

23. Data compiled by the SBA demonstrates the prioritization of applications for higher loan amounts in the early days of PPP funds dispersion compared to the final days before the PPP funds were depleted. The SBA published two sets of data compiled from PPP loans processed between April 3 – April 13, 2020, and between April 13 – April 16, 2020.

24. For the period of April 3–13, 2020, the SBA published the following data on approved PPP loans:

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 725,058 | $37,178,984,187 | 70.05% | 15.02% |
| >$150K - $350K | 156,590 | $35,735,615,983 | 15.13% | 14.44% |
| >$350K - $1M | 102,473 | $59,291,602,643 | 9.90% | 23.95% |
| >$1M - $2M | 31,176 | $43,278,883,532 | 3.01% | 17.48% |
| >$2M - $5M | 16,516 | $49,288,997,593 | 1.60% | 19.91% |
| >$5M | 3,273 | $22,769,309,582 | 0.32% | 9.20% |

- Overall average loan size is $239,152.

25. For the period of April 13–16, 2020, the SBA published the following data on approved PPP loans:

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 1,229,893 | $58,321,791,761 | 74.03% | 17.04% |
| >$150K - $350K | 224,061 | $50,926,354,675 | 13.49% | 14.88% |
| >$350K - $1M | 140,197 | $80,628,410,796 | 8.44% | 23.56% |
| >$1M - $2M | 41,238 | $57,187,983,464 | 2.48% | 16.71% |
| >$2M - $5M | 21,566 | $64,315,474,825 | 1.30% | 18.79% |
| >$5M | 4,412 | $30,897,983,582 | 0.27% | 9.03% |

- Overall average loan size is $206K.

26.     The data published by the SBA reveals that the overall average loan size was greater during the first ten days of approved PPP loans ($239,152 vs. $206,000).

27.     The SBA data demonstrates that the number of approved loans for under $350,000 was far greater in the final three days before PPP funds ran out than in the first ten days of PPP availability (881,648 approved loans in first 10 days vs. 1,453,954 in the last 3 days). This data shows a 65% increase in the number of loans for under $350,000 approved in the first 10 days compared to the final 3 days.

28.     At the same time, the number of loans approved for over $2 million increased only 31% over the same period (19,789 approved in first 10 days vs. 25,978 in the last 3 days).

29.     It is clear that lenders like Wells Fargo did not process loans on a "first come, first served" basis as required by the PPP, but rather that the loan amount and possible loan failure exposure to Defendants influenced when each application was processed and submitted for approval.

7

### III. Plaintiff's PPP Loan Application

30.     Wells Fargo CEO Charlie Scharf communicated to the public that Wells Fargo was prioritizing small businesses for PPP assistance. On April 5, 2020, Mr. Scharf stated, "We are committed to helping our customers during these unprecedented and challenging times, but are restricted in our ability to serve as many customers as we would like under the PPP. While all businesses have been impacted by this crisis, small businesses with fewer than 50 employees and nonprofits often have fewer resources. Therefore, we are focusing our efforts under the Paycheck Protection Program on these groups."[2]

31.     On its webpage dedicated to COVID-19 updates, Wells Fargo directs PPP loan applicants to "visit the SBA website for additional guidance or resources regarding eligibility, use of proceeds, application procedures and documentation required to participate."[3]

32.     Pursuant to a Consent Order issued by the Federal Reserve in February 2018, Wells Fargo was initially subject to an asset cap when PPP loan processing opened on April 3, 2020. As a result, Wells Fargo's ability to participate in the PPP was limited to issuing a maximum of $10 billion in PPP loans.

33.     After Wells Fargo petitioned the Federal Reserve to lift its restrictions and allow it to more fully participate in the PPP loan process, the Federal Reserve announced on April 8, 2020, that it would "temporarily and narrowly" amend the restrictions imposed

---

[2] https://www.businesswire.com/news/home/20200405005041/en/Wells-Fargo-Receives-Strong-Interest-Paycheck-Protection
[3] https://update.wf.com/coronavirus/paycheckprotectionprogram/?_ga=2.148064823.1807730998.1588107981-1950366628.1588107981

on Wells Fargo, allowing it "to make additional small business loans as part of the Paycheck Protection Program, or PPP . . . ."[4]

34.    That same day, April 8, 2020, Wells Fargo issued a press release stating that it would "expand its participation in the Paycheck Protection Program and offer loans to a broader set of its small business and nonprofit customers subject to the terms of the program."[5]

35.    Plaintiff learned of the CARES Act, and the PPP, when it was passed and signed into law.

36.    Plaintiff has used Wells Fargo business banking accounts since 2010. Plaintiff's owner has held personal accounts with Wells Fargo since Wells Fargo merged with Norwest Corporation in 1998. Plaintiff decided to submit a PPP loan application with Wells Fargo, in part, because of this preexisting banking relationship.

37.    On April 9, at the earliest date possible, Plaintiff opted in to Wells Fargo's application queue, which was required by Wells Fargo in order to submit a PPP loan application. Wells Fargo notified Plaintiff that the application was available for him on April 15, 2020. On April 16, 2020, Plaintiff submitted an application for a PPP loan with Wells Fargo. Plaintiff applied for a PPP loan for the purposes of keeping employees on the payroll, and to pay rent and other approved expenses.

---

[4] https://www.federalreserve.gov/newsevents/pressreleases/enforcement20200408a.htm (last visited May 19, 2020).
[5] https://newsroom.wf.com/press-release/community-banking-and-small-business/wells-fargo-expand-participation-paycheck (last visited May 19, 2020).

38.     On April 16, 2020, Plaintiff received an email acknowledgment, from Defendant, of the PPP loan application submitted by Plaintiff.

39.     On April 16, 2020, Plaintiff was notified that PPP funds were no longer available because the funds had been depleted.

40.     Because Plaintiff submitted a PPP loan application through Defendant, and Defendant did not process Plaintiff's application before PPP funds were depleted, Plaintiff was denied the opportunity to receive a PPP loan that would have enabled it to survive the current economic crisis caused by the COVID-19 pandemic.

## IV.     Additional PPP Funds Made Available

41.     On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act provided for $310 billion in additional funding for PPP loans. In connection with this additional funding, the SBA announced that it would limit the maximum dollar amount of funding authority that any one lending institution at 10% of the total PPP funding, or approximately $60 billion per lender, and put limitations on the pace at which applications could be processed by lenders.

42.     On April 26, 2020, SBA Deputy Associate Administrator Bill Briggs issued a memo stating that the SBA was implementing measures "[e]nsuring the Paycheck Protection Program continues to operate on a first-come, first-serve basis so that every small business has access to PPP loans to sustain their business and retain their employees."

43.     With these additional funds and SBA guidance, PPP loan processing resumed on April 27, 2020.

44.    Many lenders, including smaller institutions, experienced system outages when attempting to process PPP loan applications during this second round of PPP funds.

45.    As of the date of this Complaint, Plaintiff has not received any communication from Wells Fargo regarding whether Plaintiff's PPP loan application has been processed since the additional funding was approved.

## CLASS ALLEGATIONS

46.    Plaintiff brings this action on behalf of itself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a) and (b)(2) seeking equitable and injunctive relief on behalf of the following Class:

> All eligible persons or entities in the State of Minnesota who applied for a PPP loan by submitting an application with Defendant and whose application was not processed by Defendant in accordance with SBA regulations and requirements or Minnesota law.

47.    Excluded from the Class are the Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

48.    **Numerosity**. The members of the Class are so numerous that joinder of all members of any class would be impracticable, and the Class members are ascertainable.

49.    **Commonality**. There are questions of law and fact common to the Class, including but not limited to the following:

a. Whether Defendant violated the SBA regulations governing the administration, processing, and handling of PPP loan applications;

b. Whether Defendant prioritized processing applications for larger loan amounts over applications for smaller loan amounts;

c. Whether Defendants represented to Plaintiff and Class members that PPP loan applications would be processed on a first-come, first-served basis in accordance with SBA regulations;

d. Whether Defendants intended Plaintiff and Class members to rely on Defendants' statements, misrepresentations, and omissions regarding the PPP loan processing scheme;

e. Whether Plaintiff and Class members were harmed by Defendants' misrepresentations and omissions;

f. Whether Defendant violated various Minnesota laws;

g. Whether Plaintiff and Class members have been damaged, and if so, the proper measure of damages.

50. **Typicality**. Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct by Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and members of other classes arise from the same operative facts and are based on the same legal theories.

51.      **Adequacy of Representation**. Plaintiff is an adequate representative of the Class because its interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and their counsel.

52.      **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

53.      Further, Defendants have acted or failed to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regards to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of Minnesota's Uniform Deceptive Trade Practices Act,
Minn. Stat. § 325D.43, *et seq.***

54.     Plaintiff realleges the foregoing paragraphs as if set forth herein.

55.     Defendants are "persons" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

56.     By falsely misstating the true nature of the PPP loan processing scheme, Defendants knowingly misrepresented that their services were of a particular standard, quality, or grade when those services were not of that particular standard, quality, or grade.

57.     By falsely misstating the true nature of the PPP loan processing scheme, Defendants knowingly misrepresented that their services had approval, characteristics, or benefits that those services did not have.

58.     By representing that they were complying with the SBA regulations regarding PPP loan application processing, Defendants knew or should have known that Plaintiff and Class members would be misled into believing that Wells Fargo would process PPP loan applications on a first-come, first-served basis.

59.     By representing that Defendants were focusing their PPP loan processing efforts on small businesses with fewer than 50 employees, Defendants misled Plaintiff and Class members into believing that Wells Fargo would not prioritize larger PPP loans at the expense of Plaintiff's and Class members' PPP loan applications.

60.     Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Class with respect to Defendants' PPP loan application process.

61.     Defendants intended that Plaintiff and the Classes would rely on Defendants' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding their administration of the PPP loan program.

62.     The facts concealed or not disclosed by Defendants were material facts in that Plaintiff and any reasonable small business owner would have considered them in deciding when and where to submit a PPP loan application.

63.     Defendants' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

64.     Plaintiff and Class members have suffered loss by submitting their PPP loan applications through Wells Fargo in reliance on Defendants' misrepresentations and not receiving the PPP loan processing service they were promised by Defendants.

65.     Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiffs and the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

### COUNT II
### Violation of Minnesota's False Statement in Advertising Act (FSAA), Minn. Stat. § 325F.67

66.     Plaintiff realleges the foregoing paragraphs as if set forth herein.

67.    Plaintiffs used "service," specifically the PPP loan application process discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act (FSAA).

68.    Plaintiff was induced to submit a PPP loan application through Wells Fargo through advertising that contained material assertions, representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Defendants that were untrue, deceptive, and misleading.

69.    By engaging in the conduct herein, Defendants violated and continue to violate Minn. Stat. § 325F.67.

70.    Defendants' misrepresentations, knowing omissions, and misstatements include, by way of example, that Wells Fargo's PPP loan processing services:

a)    Are compliant with SBA regulations;

b)    Focus on small businesses with fewer than 50 employees and nonprofits.

71.    By representing that they were complying with the SBA regulations regarding PPP loan application processing, Defendants knew or should have known that Plaintiff and Class members would be misled into believing that Wells Fargo would process PPP loan applications on a first-come, first-served basis.

72.    By representing that Defendants were focusing their PPP loan processing efforts on small businesses with fewer than 50 employees, Defendants misled Plaintiff and Class members into believing that Wells Fargo would not prioritize larger PPP loans at the expense of Plaintiff's and Class members' PPP loan applications.

16

73.     Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Class with respect to Defendants' PPP loan application process.

74.     Defendants' conduct and omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

75.     The facts concealed or not disclosed by Defendants were material facts in that Plaintiff and any reasonable small business owner would have considered them in deciding when and where to submit a PPP loan application.

76.     Defendants' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

77.     As a result of Defendants' conduct, Plaintiff and Class members have suffered actual damages in that Defendants did not process their PPP loan applications, thereby depriving Plaintiff and Class members of forgivable, emergency financial assistance.

78.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members have been injured, and that harm is likely to continue unless Defendants are enjoined from misrepresenting the true nature of their PPP loan processing services described herein.

79.     Pursuant to Minn. Stat. § 8.31, subd. 3(a), and § 325F.67, Plaintiff and Class members seek damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the FSAA.

17

## COUNT III
## Violation of Minnesota Prevention of Consumer Fraud Act
## Minn. Stat. § 325F.69, *et seq.*

80.     Plaintiff realleges the foregoing paragraphs as if set forth herein.

81.     Plaintiff is a resident of the State of Minnesota.

82.     Defendants are "persons" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

83.     Defendants' misrepresentations and fraudulent conduct with respect to their administration of the PPP loan process were made in connection with the provision of those services to Plaintiff and the Class.

84.     Defendants knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the administration of the PPP loan process.

85.     By representing that Defendants were focusing their PPP loan processing efforts on small businesses with fewer than 50 employees, Defendants misled Plaintiff and Class members into believing that Wells Fargo would not prioritize larger PPP loans at the expense of Plaintiff's and Class members' PPP loan applications.

86.     Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Class with respect to Defendants' PPP loan application process.

87.     Defendants intended that Plaintiff and the Classes would rely on Defendants' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding their administration of the PPP loan program.

18

88.     The facts concealed or not disclosed by Defendants were material facts in that Plaintiff and any reasonable small business owner would have considered them in deciding when and where to submit a PPP loan application.

89.     Defendants' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

90.     As a result of Defendants' conduct, Plaintiff and Class members have suffered actual damages in that Defendants did not process their PPP loan applications, thereby depriving Plaintiff and Class members of forgivable, emergency financial assistance.

91.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members have been injured, and that harm is likely to continue unless Defendants are enjoined from misrepresenting the true nature of their PPP loan processing services described herein.

92.     Pursuant to Minn. Stat. § 8.31, subd. 3(a), and § 325F.69, Plaintiff and Class members seek damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MPCFA.

## COUNT IV
## Fraudulent Concealment

93.     Plaintiff realleges the foregoing paragraphs as if set forth herein.

94.     Defendants fraudulently concealed material facts they had a legal duty to disclose to Plaintiff and the Class regarding their administration, processing, and handling of loan applications through the PPP. These material facts known by Defendants include

19

the order of how applications for loans would actually be processed and granted, that the processing and granting of larger loans would be given priority over smaller loans or loans where there was greater exposure to the bank over loans where there was less exposure, and the application for loans through the PPP would not be processed or granted in accordance with the SBA regulations.

95.     Wells Fargo intentionally and knowingly omitted this information to induce Plaintiff and the Class to submit applications for loans through the PPP with them.

96.     Defendants knew the concealment or nondisclosure of these facts regarding the true nature of how the PPP loan applications were going to be administered, processed and handled were material to Plaintiff and the Class because they contradicted the representations made by Defendants in their public statements and marketing.

97.     Defendants had a legal duty to disclose this information because Defendants knew the representations made in their public statements and marketing created a false impression unless these omitted material facts were disclosed to Plaintiff and the Class, particularly because the SBA regulations required that applications be processed on a first-come, first served basis.

98.     Plaintiff and the Class had no knowledge of the true nature of how Defendant would process and handle PPP loan applications based on Defendants' fraudulent concealment and nondisclosures, and they had no ability to discover the omitted information prior to submitting their loan applications. Given the deceptive manner in which Defendants chose to omit or not disclose material information concerning the true

nature of how they were administering, processing, and handling PPP loan applications, Plaintiff and the Class were injured.

99. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered actual damages in that they submitted applications for loans through the PPP with Defendants and because they could only apply for such loans once and were prevented from seeking assistance from another lender.

100. Plaintiff and the Class seek injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## COUNT V
## Breach of Fiduciary Duty

101. Plaintiff realleges the foregoing paragraphs as if set forth herein.

102. Defendants owed and continue to owe fiduciary duties to Plaintiff and Class members by virtue of the fact that no arm's length transaction existed, because Defendants failed to provide or concealed from Plaintiff and Class members material information that would reveal that Defendants' PPP loan processing scheme was not compliant with SBA regulations.

103. As fiduciaries, Defendants owed fiduciary duties to Plaintiffs and Class members, including a duty to refrain from taking actions detrimental to Plaintiff and Class members' financial and other interests.

104. As a result of the PPP loan processing scheme, Defendants breached the fiduciary duties owed to Plaintiff and Class members.

105.   Defendants mispresented and concealed the PPP loan processing scheme from Plaintiff and Class members.

106.   By their actions, Defendants unjustly profited as a result of the PPP loan processing scheme in the form of commission fees. As alleged herein, Defendants prioritized loan applications that would result in larger commission fees over Plaintiff and Class members' loan applications.

107.   As a direct and proximate result of Defendants' breaching their fiduciary duties to Plaintiff and Class members, Plaintiff and Class members have suffered damages as alleged herein.

## COUNT VI
## Negligence

108.   Plaintiff realleges the foregoing paragraphs as if set forth herein.

109.   Defendants' conduct is negligent per se.

110.   Defendants breached duties set forth in SBA regulations, including ethical requirements set forth in 13 CFR Part 120.140: (a) "[no] real or apparent confit of interest with a small business with which it is dealing;… (f) "engag[ing] in conduct reflecting a lack of business integrity or honesty;… (j)(1) [not disclosing] that a loan will reduce the exposure of a [bank]; or (l) engag[ing] in any activity which taints its objective judgment in evaluating the loan."

111.   Defendants' violations of these regulations is negligence per se and was a substantial factor in the harm suffered by Plaintiff and the Class, including their submission of applications for loans through the PPP with Defendants, who violated the "first come,

22

first served" basis for processing loan applications by processing larger loans ahead of smaller loans.

112. As a direct result of Defendants' negligent conduct, Plaintiff and Class members have suffered injuries as alleged herein.

**COUNT VII**
**Unjust Enrichment**

113. Plaintiff realleges the foregoing paragraphs as if set forth herein.

114. As described herein, Defendants represented in public statements, communications, advertisements, and marketing materials that Wells Fargo would process PPP loan applications in accordance with SBA regulations requiring that the applications be processed on a first-come, first-served basis, intending that consumers would rely on those misrepresentations and submit PPP loan applications through Wells Fargo.

115. Had Defendants disclosed their true PPP loan application processing scheme, Plaintiff and Class members would not have submitted their PPP loan applications through Wells Fargo.

116. Defendants generated profits from misleading Plaintiff and Class members into submitting their PPP loan applications through Wells Fargo.

117. Defendants have been knowingly and unjustly enriched at the expense and at the detriment of Plaintiff and Class members by collecting excess profits in the form of commission fees to which Defendants are not entitled.

118.    Defendants' actions were unjust because, absent the PPP loan processing scheme, they would not have been able to receive as much money from processing PPP loan applications.

119.    Defendants have unjustly retained those ill-gotten profits and should be required to disgorge this unjust enrichment.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, individually and on behalf of all others similarly situated, respectively requests judgment against Defendant as set forth below:

A.    That the Court determines that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative and its counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Classes, once certified;

B.    That Plaintiff  and the Class recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgments in favor of Plaintiff  and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

C.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing to

administer, process, or handle PPP loans inconsistent with or in violation of the regulations governing the PPP.;

D.     Plaintiff and the members of the Class be awarded pre-and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint;

E.     Plaintiff and the members of the Class recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

F.     Plaintiff and the members of the Class have such other and further relief as the case may require and the Court deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, on all issues so triable.

Dated:  June 11, 2020                               Respectfully submitted,

                                                                     s/Daniel E. Gustafson
                                                                    Daniel E. Gustafson (#202241)
                                                                    Raina C. Borrelli (#392127)
                                                                    Mickey L. Stevens (#0398549)
                                                                    **GUSTAFSON GLUEK PLLC**
                                                                    Canadian Pacific Plaza
                                                                    120 South 6th Street, Suite 2600
                                                                    Minneapolis, MN 55402
                                                                    Tel: (612) 333-8844
                                                                    dgustafson@gustafsongluek.com
                                                                    rborrelli@gustafsongluek.com
                                                                    mstevens@gustafsongluek.com

Kenneth A. Wexler
Bethany R. Turke
**WEXLER WALLACE LLP**
55 W. Monroe Street
Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
brt@wexlerwallace.com

Simon B. Paris
Patrick Howard
**SALTZ MONGELUZZI
BARRETT & BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19013
Tel: (215) 496-8282
Sparis@smbb.com
Phoward@smbb.com

*Attorneys for Plaintiff*