BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: WELLS FARGO PAYCHECK PROTECTION PROGRAM LITIGATION** | **MDL Docket No. 2954**<br><br>**ORAL ARGUMENT REQUESTED** |

**WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Wells Fargo & Co.[1] and Wells Fargo Bank, N.A., by and through their undersigned counsel, oppose DNM Contracting, Inc.'s ("Movant") *Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407* (the "Motion"), and state the following in opposition:

## I.  INTRODUCTION

Movant seeks to consolidate eight actions (the "Included Actions") that allege various, disparate claims that have something to do with Wells Fargo Bank's participation in the recently enacted Paycheck Protection Program ("PPP").[2]  The Motion should be denied.  Consolidation is proper only where the movant has demonstrated that cases share common facts that are numerous or complex and that consolidation would serve "the convenience of parties and witnesses" and

---

[1]  Specially appearing Defendant Wells Fargo & Co., which has been named as a defendant in several of the actions at issue, is not a proper defendant to those actions.  It is a financial holding company under the Bank Holding Company Act of 1956, 12 U.S.C. § 1841, and has never offered loans under the Paycheck Protection Program.

[2]  A potential tag-along action, *BAM Navigation, LLC* v. *Wells Fargo & Co., et al.*, No. 0:20-cv-01345 (D. Minn.), was filed on June 11, 2020.  Counsel for BAM Navigation, LLC filed a Notice of Related Action identifying this case as related to the Included Actions on June 23, 2020 (Dkt. No. 11).

"promote the just and efficient conduct" of the actions.  28 U.S.C. § 1407; *In re Nat'l Credit Union Admin. Bd. Mortgage-Backed Sec. Litig.*, 996 F. Supp. 2d 1374, 1376 (J.P.M.L. 2014).  Movant fails to satisfy that burden here, most notably because the Included Actions lack the "common factual core" necessary for consolidation.  *In re Stirling Homex Corp. Sec. Litig.*, 442 F. Supp. 547, 549 (J.P.M.L. 1977).

Movant contends that the Included Actions "share substantially similar allegations and common issues of fact and law" because each such action alleges that Wells Fargo Bank "violated the 'first-come, first-served' mandate by the [Small Business Administration]" in connection with the PPP and seeks certification of a class (or classes) of "eligible PPP applicants who were harmed as a result of the Defendants' illegal practices."  (Mot. at 4-5.)

This is not remotely an accurate description of the Included Actions.  Two of the Included Actions are not even brought by PPP applicants at all:  one action is a putative securities class action brought by a Wells Fargo & Co. *shareholder*, and another action is brought by purported third-party "agents" who claim that they are owed fees by Wells Fargo Bank and other lenders due to the assistance they allegedly provided to PPP borrowers.[3]  A third action, although brought by plaintiffs who allegedly sought PPP loans, makes claims based on alleged facts that are completely unrelated to the "first-come, first-served" allegations — that case instead challenges Wells Fargo Bank's requirement that PPP loan applicants have a pre-existing business checking relationship with the bank.

---

[3]    On June 23, 2020, the day before this Opposition was due to be filed, the parties to the agent fees action stipulated to its removal from the Schedule of Actions because the agent fees action is "the subject of and is included in the Schedule of Actions for a separate motion pending before the Panel, *In re Paycheck Protection Program (PPP) Agent Fees Litigation*, MDL No. 2950."  (Dkt. No. 13.)  The Panel has yet to issue an order removing the agent fees action.

The remaining five Included Actions (as well as the lone potential tag-along action) do bring claims related to Wells Fargo Bank's alleged prioritization of certain customers for PPP loans, but the commonality between these actions ends there. Plaintiffs in each action differ in respects that are highly relevant to questions of standing, injury, and mootness: Some plaintiffs have received PPP loans through Wells Fargo Bank. Other plaintiffs' applications have been withdrawn by the borrower, approved pending receipt of information from the borrower, or are still pending.[4] Even assuming that these plaintiffs can demonstrate that they have standing to bring their claims and that there is a live controversy, these issues will be the subject of individualized discovery not suited to centralization. Plaintiffs' unique circumstances alone counsel against centralization, but there are also substantial case-specific differences in class definitions, causes of action, and allegations. These myriad dissimilarities between the Included Actions "reduce any efficiencies to be gained from centralization" and militate against consolidation. *In re Trilegiant Membership Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011).

In response to a separate motion to consolidate dozens of actions brought by purported agents claiming an entitlement to fees for helping borrowers with their PPP loan applications, Wells Fargo Bank has supported consolidation. *See* Wells Fargo Bank, N.A.'s Response to Alliant CPA Group LLC's Motion for Transfer of Actions, *In re Paycheck Protection Program (PPP) Agent Fees Litigation*, MDL No. 2950, Dkt. No. 174. Unlike here, those cases raise the exact same threshold question, there are many more of them pending in multiple courts across the country,

---

[4] Wells Fargo will offer evidence of each plaintiff's PPP loan application status at the appropriate time and in the appropriate jurisdiction. Wells Fargo chose not to submit documentation regarding its customers' loan applications in a public filing; however, Wells Fargo can provide such documentation to the Panel for *in camera* inspection should the Panel request it.

3

they raise fewer and simpler plaintiff-specific questions, and the efficiencies to be gained by litigating them in a consolidated proceeding are significant.

The requirements for transfer under Section 1407 are present for the agent fee cases, but they are not met here. Accordingly, the Included Actions should stay in the courts where they were filed.

## II. BACKGROUND

Congress created the PPP as part of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 ("CARES Act") to assist small businesses facing hardship during the global COVID-19 pandemic. The PPP initially provided $349 billion in funding for loans to help small businesses meet payroll and cover other expenses. Those funds were quickly depleted, however, and, on April 24, 2020, the President signed into law the Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, which allocated an additional $310 billion in funds to the PPP. The PPP loans, which are forgivable and guaranteed by the Small Business Administration ("SBA"), are not made by the federal government or the SBA, but by private lenders like Wells Fargo Bank. No bank is required to participate in the PPP; however, nearly 5,500 lenders across the country volunteered to do so. These lenders have approved over 4,600,000 loans, totaling more than $515 billion through two rounds of funding.[5] Over $128 billion of allocated funding currently remains in the PPP.[6]

On April 5, 2020, Wells Fargo Bank announced that it was planning "to distribute a total of $10 billion to small business customers under the requirements of the PPP" and would focus on

---

[5] Paycheck Protection Program, https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program.

[6] *Paycheck Protection Program (PPP) Report* at 9, SMALL BUS. ADMIN. (June 20, 2020), https://www.sba.gov/sites/default/files/2020-06/PPP_Report_200620-508.pdf ("SBA Report").

serving nonprofits and businesses with under 50 employees, which had "fewer resources" than other businesses.[7]  In addition, Wells Fargo Bank stated that it would not retain fees generated from PPP loans.[8]  Subsequently, on April 8, 2020, following action by the Federal Reserve, Wells Fargo Bank announced that "it w[ould] expand its participation in the Paycheck Protection Program and offer loans to a broader set of its small business and nonprofit customers subject to the terms of the program."[9]  Wells Fargo Bank limited its PPP loans to applicants with "a Wells Fargo Business checking account as of Feb. 15, 2020."[10]  In the following days, Wells Fargo Bank "mobilized hundreds of Wells Fargo employees and launched new automation and technology so [it could] process the extremely high volume of [PPP] applications."[11]  According to public SBA statistics, Wells Fargo Bank is the fifth largest PPP lender; as of June 20, 2020, it had approved 178,533 loans totaling over $10 billion, with an average loan size of $57,931—the second *lowest* average among the 15 identified lenders, and little more than half of the overall average loan size of $110,187.[12]

The Included Actions assert that Wells Fargo Bank engaged in various forms of purported misconduct related somehow to the PPP.  One, *Ma* v. *Wells Fargo & Co, et al.*, No. 3:20-cv-03697

---

[7]   *Wells Fargo Receives Strong Interest in the Paycheck Protection Program (PPP)*, WELLS FARGO NEWSROOM (Apr. 5, 2020), https://newsroom.wf.com/press-release/community-banking-and-small-business/wells-fargo-receives-strong-interest-paycheck.

[8]   *Id.*

[9]   *Wells Fargo to Expand Participation in the Paycheck Protection Program (PPP)*, WELLS FARGO NEWSROOM (Apr. 8, 2020), https://newsroom.wf.com/press-release/community-banking-and-small-business/wells-fargo-expand-participation-paycheck.

[10]  *Id.*

[11]  *Statement from Wells Fargo on the Paycheck Protection Program*, WELLS FARGO NEWSROOM (Apr. 16, 2020), https://newsroom.wf.com/press-release/corporate-and-financial/statement-wells-fargo-paycheck-protection-program.

[12]  SBA Report, at 7; Paycheck Protection Program, https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program.

(N.D. Cal.) is a putative securities class action alleging that Wells Fargo & Co., its CEO, and CFO violated federal securities laws by making material misstatements about Wells Fargo Bank's PPP loan allocation. Another Included Action, *Full Compliance, LLC, et al.* v. *Amerant Bank, N.A., et al.*, No. 1:20-cv-22339 (S.D. Fla.), brings claims based on an entirely different set of facts and issues: namely, agents' entitlement (or lack thereof) to collect fees from PPP lenders under the CARES Act. Plaintiffs (Florida limited liability companies) allege that Wells Fargo Bank owes them agent fees because they assisted small businesses in applying for PPP loans with the bank, despite having no contractual or other relationship with Wells Fargo Bank. Yet another Included Action, *Scherer, et al.* v. *Wells Fargo Bank, N.A.*, No. 4:20-cv-01295 (S.D. Tex.), brings claims concerning Wells Fargo Bank's eligibility criteria for PPP loans. Plaintiffs allege that Wells Fargo Bank unlawfully excluded PPP loan applicants who did not have a business checking account with the bank as of February 15, 2020.

The remaining cases, including the potential tag-along case (together, the "Prioritization Cases"), relate to Wells Fargo Bank's supposed failure to process PPP applications on a "first-come, first-served" basis, which plaintiffs allege is required by the CARES Act, but even these cases lack a "common factual core."[13] *Stirling Homex Corp.*, 442 F. Supp. at 549. The Prioritization Cases are rife with distinct and different "case-specific factual and legal issues." *In re Express Scripts Holding Co. Sec., Deriv. & Employee Ret. Income Sec. Act (ERISA) Litig.*, 273

---

[13] The Prioritization Cases include (1) *BSJA, Inc., et al.* v. *Wells Fargo & Co., et al.*, No. 2:20-cv-03588 (C.D. Cal.); (2) *DNM Contracting, Inc.* v. *Wells Fargo Bank, N.A.*, No. 4:20-cv-01790 (S.D. Tex.); (3) *Physical Therapy Specialists, P.C.* v. *Wells Fargo Bank, N.A.*, No. 1:20-cv-01190 (D. Colo.); (4) *Marselian* v. *Wells Fargo and Company, et al.*, No. 4:20-cv-03166 (N.D. Cal.), (5) *Karen's Custom Grooming LLC* v. *Wells Fargo & Company, et al.*, No. 3:20-cv-00956 (S.D. Cal.); and (6) *BAM Navigation, LLC* v. *Wells Fargo & Co., et al.*, No. 0:20-cv-01345 (D. Minn.) hereinafter referred to as *BSJA*, *DNM*, *Physical Therapy Specialists*, *Marselian*, *Karen's Custom Grooming*, and *BAM*, respectively.

F. Supp. 3d 1369, 1371 (J.P.M.L. 2017). For example, each of the complaints in the Prioritization Cases includes different state statutory and common law claims with different elements and potential defenses. The composition of the proposed putative class(es) also varies from case to case. Some are putative statewide classes (*BSJA*, *Physical Therapy Specialists*, *BAM*), another is nationwide (*DNM*), and two complaints propose one statewide and one nationwide class (*Marselian*, *Karen's Custom Grooming*). Moreover, the classes include different types of plaintiffs: some of the classes are limited to plaintiffs who applied for PPP loans (*BSJA*, *Marselian*, *Karen's Custom Grooming*, *BAM*); another merely requires class members to have *attempted* to apply (*Physical Therapy Specialists*). One putative class is limited to borrowers who applied for PPP loans with Wells Fargo Bank, but were not issued loans or whose applications were not processed (*Marselian*); another consists of class members whose applications were not processed in the order of receipt (*Karen's Custom Grooming*); three others are restricted to class members who were not issued loans and/or whose applications were not processed in accordance with the CARES Act and/or SBA regulations or, in the case of *BAM*, Minnesota law (*BSJA*, *Physical Therapy Specialists*, *BAM*); and the last putative class includes Wells Fargo Bank small business customers who utilized Wells Fargo Bank for assistance with and processing of their PPP loans (*DNM*). Four of the six proposed classes require class members to have been eligible for PPP loans (*BSJA*, *Physical Therapy Specialists*, *Marselian*, *BAM*).

      The Prioritization Cases also allege different types of supposed misconduct. In *DNM*, for example, the plaintiff's 12-page complaint focuses narrowly on Wells Fargo Bank's purported prioritization of "select customers" and "bigger businesses" for PPP loans. (*DNM* Compl. ¶ 1.) On the other hand, plaintiff's 55-page complaint in *Karen's Custom Grooming* alleges a whole host of purported wrongs, including allegations that Wells Fargo Bank prioritized customers

seeking large loan amounts, failed to put applicants in a queue based on when they first expressed interest in a PPP loan, and failed to timely host a website where all those seeking PPP loans could apply. (*Karen's Custom Grooming* ("KCG") Compl. ¶¶ 11-13, 16.)

The plaintiffs' individual circumstances vary widely in ways that have ramifications for standing, injury, and mootness. While some plaintiffs have received PPP funding through Wells Fargo, others' loan applications were withdrawn, remain pending, or were approved pending receipt of certain information from the borrower.

### III.  LEGAL STANDARD

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred [by this Panel] to any district for coordinated or consolidated pretrial proceedings . . . . upon its determination that" centralization will serve "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The party seeking transfer bears the "burden of demonstrating the need for centralization." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011). This burden is even "heavier" where "only a minimal number of actions are involved." *In re Kissi*, 923 F. Supp. 2d 1367, 1369 (J.P.M.L. 2013). "[C]entralization under Section 1407 should be the last solution after considered review of all other options." *Best Buy*, 804 F. Supp. 2d at 1378; *cf. In re Gemcap Lending I, LLC, Litig.*, 382 F. Supp. 3d 1352, 1352 (J.P.M.L. 2019) ("We do not find Section 1407 centralization is necessary for a minimal number of parties and actions, particularly where the parties have made no effort to informally cooperate.").

## IV. ARGUMENT

### A. Individual facts predominate over alleged common fact questions.

To be eligible for centralization under Section 1407, it is not enough that the Included Actions have "some factual overlap." *In re Abbott Labs., Inc., Similac Prods. Liab. Litig.*, 763 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011). Rather, the Included Actions must share a "common factual core." *Stirling Homex Corp.*, 442 F. Supp. at 549. Denial of a motion for transfer is warranted when "individual facts contained in [the Included Actions] will predominate over any alleged common fact questions." *Abbott Labs.*, 763 F. Supp. 2d at 1376; *see also, e.g.*, *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (denying transfer where "unique questions of fact predominate[d] over any common questions"). In addition, "common questions of fact among the[] actions [must be] sufficiently complex and/or numerous to justify centralization." *Nat'l Credit Union*, 996 F. Supp. 2d at 1376; *Abbott Labs.*, 763 F. Supp. 2d at 1377 ("Although plaintiffs are correct that some factual overlap exists among the present actions, the proponents of centralization have failed to convince us that any shared factual questions in these actions are sufficiently complex and/or numerous to justify Section 1407 transfer . . . ."). Here, the Motion should be denied because, although the Included Actions broadly pertain to Wells Fargo Bank's participation in the PPP, "individual facts contained in these actions [] predominate over any alleged common fact questions." *Abbott Labs.*, 763 F. Supp. 2d at 1376.

#### 1. *Ma*, *Full Compliance*, and *Scherer* do not share a common factual core with the Prioritization Cases or each other.

*Ma*, *Full Compliance*, and *Scherer* are entirely different from the Prioritization Cases — and from each other — and for that reason should not be centralized. As explained above, *Ma* is a putative securities class action alleging that Wells Fargo & Co., its CEO, and its CFO made material misstatements about the Company's PPP loan allocation, artificially inflating the

Company's stock price. Named plaintiff and the other class members allegedly were induced to purchase shares at these inflated prices and suffered losses when the "truth" emerged that Wells Fargo Bank was actually prioritizing certain customers, causing the Company's stock price to fall. (*Ma* Compl. ¶¶ 34-39.) Major factual questions in that case include, but are not limited to, whether the alleged misstatements were false or misleading, whether the defendants made any purported misstatements with scienter, and whether Wells Fargo & Co.'s stock price fell as a result of the "truth" being revealed to the market. Unlike any other Included Action, *Ma* involves individual defendants, raising distinct fact questions as to their alleged liability that are ill-suited for centralization. *See In re NebuAd Device Privacy Litig.*, 716 F. Supp. 2d 1370, 1371 (J.P.M.L. 2010) (motion for transfer denied where the actions were brought against "different internet service provider defendant[s]"). In addition, the claims (alleged violations of federal securities laws) and the proposed class (those who purchased or otherwise acquired Wells Fargo & Co. stock during the Class Period) are unique among the Included Actions.

*Full Compliance* pertains to a wholly different issue: whether or not "agents" are entitled to fees under the CARES Act. Plaintiffs allege that Wells Fargo Bank owes them fees because they purportedly assisted small businesses in applying for PPP loans with the bank. (*Full Compliance* Compl. ¶ 51.) *Full Compliance* is the only Included Action brought by such purported "agents." The action is also unique in that it names 19 other financial institutions as defendants. It also is one of dozens of similar agent fee cases, all of which are subject to inclusion in a different potential multi-district litigation, *In re Paycheck Protection Program (PPP) Agent Fees Litigation*, MDL No. 2950.[14]

---

[14] As explained above, unlike the Included Actions, the agent fee cases should be consolidated because they uniformly present the same threshold legal question and it would be inefficient to litigate them in dozens of courts across the country.

10

*Scherer* concerns yet still another, entirely different question: whether Wells Fargo Bank lawfully refused to accept PPP loan applications from applicants who did not have a business checking account with the bank as of February 15, 2020. As noted in its motion to dismiss the second amended complaint in *Scherer*, filed May 26, 2020, Wells Fargo Bank does not dispute that it required applicants for PPP loans to be pre-existing customers and instead contends that the CARES Act permits lenders to impose requirements other than those enumerated in the statute. *See* Motion to Dismiss, *Scherer*, Dkt. No. 29. Wells Fargo Bank believes it is likely to prevail on its motion to dismiss, but should the case survive the motion, the principal factual question would likely be whether the individual plaintiffs suffered any harm as a result of Wells Fargo Bank's conduct. This kind of individualized inquiry would not lend itself to centralization. In addition, because the proposed class (entities who were prevented from applying for a PPP loan by Wells Fargo Bank because they lacked a pre-existing business checking relationship with the Company) is unique among the Included Actions, case-specific analysis would be required at the class certification stage.

### 2. The Prioritization Cases also lack a common factual core.

The Prioritization Cases relate to Wells Fargo Bank's allocation of PPP loans, but differences abound among these cases, too. The Prioritization Cases differ in at least four ways:

***The plaintiffs' individual circumstances vary across cases.*** *First*, the plaintiffs' individual circumstances differ materially across actions in ways that have consequences for standing, injury, causation, and mootness. Some of the plaintiffs have received a PPP loan through Wells Fargo. Other plaintiffs' applications have been withdrawn, or approved pending receipt of follow-up information or documents from the borrower, or remain pending. Counsel for plaintiffs in one of the Prioritization Cases has indicated that it is searching for a new named plaintiff because the PPP loan applications of the plaintiffs in that action have been approved.

As these examples make clear, the Prioritization Cases involve fundamental factual differences without a "common factual core" that supports centralization.  A case with named plaintiffs who may have received funding from Wells Fargo Bank is almost certainly dead in the water, whereas a case with a plaintiff who may have declined a loan that Wells Fargo Bank offered will hinge, in large part, on factual questions concerning the plaintiff's reasons for declining (such as that the plaintiff secured funding from another lender), and, if the plaintiff obtained a PPP loan from another lender, whether the plaintiff can reasonably claim to have suffered harm at the hands of Wells Fargo Bank.  Centralization makes little sense given the plaintiffs' divergent circumstances and divergent threshold factual and legal questions.  *See In re Helicopter Crash Near Cameron, La.*, 443 F. Supp. 1022, 1023 (J.P.M.L. 1978) (the Panel could not "conclude that transfer . . . [would] further the purposes of [Section 1407]" where "counsel ha[d] stated that the question of liability might never arise [in one of the actions] because of important threshold issues involving the standing of the plaintiff parent in that action to sue"); *In re Bernzomatic & Worthington Branded Handheld Torch Prods. Liab. Litig. (No. II)*, 410 F. Supp. 3d 1355, 1356 (J.P.M.L. 2019) (Section 1407 centralization was inappropriate where the "accidents in which plaintiffs suffered injuries arose in different circumstances.").

In addition, while plaintiffs in the Prioritization Cases generally allege that Wells Fargo Bank made misrepresentations regarding its PPP loan allocation, including in public statements such as press releases, certain plaintiffs allege that they had additional individual communications with the bank in which representations were made to plaintiffs about their loans.  For example, Karen's Custom Grooming alleges that it received multiple e-mail communications in which Wells Fargo Bank represented that plaintiff "remained 'in the queue based upon when [it] submitted [its] initial interest'" and that Wells Fargo Bank was continuing to "work through the queue in order."

(KCG Compl. ¶ 44.) Individualized discovery would be required to determine what representations were made and when, by whom, whether they were false or misleading, and whether plaintiff justifiably relied on them.

*The alleged misconduct varies across cases.* *Second*, the Prioritization Cases allege varying and different purported misconduct by Wells Fargo Bank. For example, in *DNM*, plaintiff alleges that Wells Fargo Bank prioritized "select customers" and "bigger businesses" for approval and "*selectively exclud[ed]* Plaintiff and Class Members from the application process." (*DNM* Compl. ¶¶ 1, 28 (emphasis added).) The allegations in *Physical Therapy Specialists* are materially different from those in *DNM*: plaintiff there alleges that Wells Fargo Bank established "separate line[s]" for Small Business and Commercial Banking customers, treated the Commercial Banking line as an "express lane," and, as a result, a smaller percentage of "Wells Fargo's retail, 'Small Business' customers that tried to apply for PPP loans were approved." (*Physical Therapy Specialists* ("PTS") Compl. ¶¶ 5, 20.) In contrast to both *DNM* and *Physical Therapy Specialists*, plaintiff in *Karen's Custom Grooming* alleges a multiplicity of purported wrongs. Specifically, plaintiff asserts that Wells Fargo Bank "prevented and/or prejudicially delayed Plaintiff and members of the Classes in seeking to apply for PPP Loans" by (1) requiring that PPP loan applicants have a business checking account with Wells Fargo Bank as of February 15, 2020; (2) focusing its efforts during the first round of funding on businesses with under 50 employees and nonprofits; (3) failing to put applicants in a queue based on when they first expressed interest and instead prioritizing applications from customers seeking large loan amounts or applications from otherwise preferred customers; and (4) failing to timely host an active webpage with a link to the PPP application in order to permit all those seeking PPP loans to apply. (KCG Compl. ¶¶ 10-13, 16.) These extensive factual dissimilarities in the alleged misconduct weigh strongly against

13

centralization. *See*, *e.g.*, *In re Starbucks Corp. Mktg. & Sales Practices Litig.*, 222 F. Supp. 3d 1348, 1349 (J.P.M.L. 2016) (centralization unwarranted where two cases concerned alleged under-filling of beverages based upon recipes and equipment unique to hot drinks and two others concerned alleged under-filling of cold beverages based upon recipes and equipment unique to iced drinks). Further, even if this Panel were to find that the Prioritization Cases involve a "common factual core," any common factual questions pertaining to whether Wells Fargo Bank prioritized certain customers would be "relatively straightforward" and thus not sufficiently complex to justify centralization. *See*, *e.g.*, *In re Intelius, Inc., Post-Transaction Sales & Mktg. Litig.*, 706 F. Supp. 2d 1374, 1375 (J.P.M.L. 2010) (denying centralization where the actions involved "relatively straightforward consumer misrepresentation claims"); *In re Six Flags Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 289 F. Supp. 3d 1343, 1344 (J.P.M.L. 2018) (centralization denied where question of whether defendants "violated the Fair and Accurate Credit Transactions Act by printing more than the last five digits of consumers' credit and/or debit card numbers on their receipts" was a "relatively straightforward" factual issue).

***The proposed classes vary across cases.*** *Third*, plaintiffs in the Prioritization Cases propose various classes—statewide, nationwide, or both statewide and nationwide. The types of plaintiffs included in the classes differ as well. For example, in *Marselian*, the class is comprised of small businesses that met the criteria for a PPP loan and timely applied with Wells Fargo Bank, but whose applications were not processed and/or who were not issued loans. (*Marselian* Compl. ¶ 88.) The (statewide and nationwide) classes in *Karen's Custom Grooming* are comprised of small businesses who applied to Wells Fargo Bank for PPP loans and whose applications were not processed *in the order received*. (KCG Compl. ¶ 67.) Plaintiffs in *BSJA*, *Physical Therapy Specialists*, and *BAM* bring suits on behalf of businesses qualified for PPP loans who applied for

14

(or, in the case of *Physical Therapy Specialists*, who applied or *attempted to apply* for) loans but whose applications were not processed and/or who were not issued loans in accordance with the CARES Act or SBA regulations (or, in *BAM*, Minnesota law). (*BSJA* Compl. ¶ 46; PTS Compl. ¶ 24; *BAM* Compl. ¶ 46.) The class in *DNM* is broader, covering small businesses who utilized Wells Fargo Bank for processing of their PPP loans (with no reference to PPP loan eligibility or if/how the loans were processed). (*DNM* Compl. ¶ 15.) These variations in class definitions are likely to result in case-specific questions and discovery at the class certification stage.

***The claims vary across cases.*** *Fourth*, the Prioritization Cases plead an array of different claims (five out of the six actions assert at least one unique claim), including but not limited to violations of different state consumer protection statutes, tortious interference, fraud, and negligence, each of which involves different elements and potential defenses. Further, even where different actions allege some claims in common, those claims may be adjudicated with reference to different states' laws, depending on the state in which the District Court sits. This Panel repeatedly has recognized the implication of varying state laws as a reason not to centralize. *See*, *e.g.*, *In re DIRECTV, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 84 F. Supp. 3d 1373, 1375 (J.P.M.L. 2015) (denying centralization of 11 actions where plaintiffs' claims implicated multiple states' laws); *In re Title Ins. Real Estate Settlement Procedures Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (denying centralization of 25 actions due to variances in state law); *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348, 1350 (J.P.M.L. 2006) ("The Panel is persuaded, however, that the single California state law claim brought . . . in the Central District of California action is unique and therefore should not be included in the [MDL] proceedings at the present time."); *In re Rite Aid Corp. Wage & Hour Emp't Practices Litig.*, 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009)

("differing provisions" in "various state wage laws" weighed against centralization). Unlike the agent fee cases, there is no common threshold legal issue that might result in a merits dismissal of all of the Prioritization Cases.

In short, notwithstanding some factual overlap among the Prioritization Cases, case-specific questions predominate and weigh against centralization. *See In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1340-41 (J.P.M.L. 2016) (despite the fact that the actions "unquestionably share[d] factual questions," centralization was not appropriate where "one action . . . raise[d] case-specific factual and legal issues").

### B. Transfer is neither convenient to the parties and witnesses nor would it promote the just and efficient conduct of the actions.

To demonstrate that centralization serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the actions, the movant must do more than show that there are common factual questions. *See*, *e.g.*, *In re Concrete Pipe*, 302 F. Supp. 244, 254 (J.P.M.L. 1969) ("[N]either the convenience of witnesses and the parties nor the just and efficient conduct of actions are served, ipso facto, by transfer just because there are common questions of fact in the civil actions involved."); *In re Joel Snider Litig.*, 2020 WL 1503250, at *1 (J.P.M.L. Mar. 27, 2020) (centralization not warranted despite "some factual overlap" where the actions were "already . . . proceeding in an orderly manner in the two districts in which they [were] pending"). The Panel has held that centralization should "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1380-81 (J.P.M.L. 2012). On the other hand, transfer may be *in*appropriate where "suitable alternatives . . . exist in order to minimize

the possibility of duplicative discovery, inconsistent pretrial rulings, or both." *In re Coal-Fired Elec. Utils. Clean Air Act Litig.*, 162 F. Supp. 2d 696, 697 (J.P.M.L. 2001). Centralization is the option of last resort. *See Best Buy*, 804 F. Supp. 2d at 1378 ("[C]entralization under Section 1407 should be the last solution after considered review of all other options.").

Because the Included Actions involve significant factual differences, as set forth above, centralization will not eliminate duplicative discovery, prevent inconsistent trial rulings, or conserve the resources of the parties, their counsel, or the judiciary. On the contrary, centralization would create needless complexity; a judge assigned to oversee the proposed multi-district litigation would be burdened with numerous case-specific legal and factual questions and case-specific discovery. *See ERISA Litig.*, 273 F. Supp. 3d at 1371 ("These case-specific issues are likely to undermine the alleged efficiencies that could be gained from centralizing an already minimal number of actions.").

In addition, there is good reason to believe that dispositive motion practice will soon eliminate some or all of the Included Actions, which are already few in number, making centralization an even less suitable solution. Wells Fargo Bank has already moved to dismiss the second amended complaint in *Scherer* because it suffers from multiple fatal defects: plaintiff has not identified a private right of action, *see Profiles, Inc.* v. *Bank of Am. Corp.*, 2020 WL 1849710, at *7 (D. Md. Apr. 13, 2020), and failed to plead injury. Moreover, one or more of the Included Actions may be mooted on the ground that the named plaintiffs have obtained a PPP loan through Wells Fargo Bank or another bank. Given that the small number of actions here will likely shrink even more (and perhaps to zero) in the near term, this Panel should deny the Motion. *See In re Droplets, Inc., Patent Litig.*, 908 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization where "a potentially case-dispositive motion [was] pending" because if "that motion [was] granted,

17

the remaining five actions w[ould] be pending in only two districts, further weakening the case for Section 1407 centralization"); *In re Accutane Prods. Liab. Litig.*, 560 F. Supp. 2d 1370, 1370-71 (J.P.M.L. 2008) (vacating transfer order as to specific action because of motion "involv[ing] an issue of Texas law" that was "unique" to that action and "potentially dispositive of the entire action"); *In re ATM Interchange Fee Antitrust Litig.*, 350 F. Supp. 2d 1361, 1362-63 (J.P.M.L. 2004) (recognizing that transfer should be denied where pending rulings or motions may moot the multidistrict proceedings).

In light of the small number of Included Actions and the fact that defendants are represented by common counsel in all actions except *Full Compliance* (which involves numerous financial institution defendants represented by different counsel and should not be consolidated with the other Included Actions, for the reasons previously discussed), there are "workable alternative[s] to centralization." *Six Flags*, 289 F. Supp. 3d at 1344; *Bernzomatic*, 410 F. Supp. 3d at 1356 ("Given the limited number of actions and involved counsel, informal coordination of discovery and other pretrial matters among the parties and involved courts, if the need arises, is preferable to formal centralization under Section 1407."). "Notices of deposition can be filed in all related actions; the parties can stipulate that, where appropriate, discovery taken in one action can be used in both actions; or the involved courts may direct the parties to coordinate their pretrial activities." *In re Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright Infringement Litig.*, 939 F. Supp. 2d 1372, 1373 (J.P.M.L. 2013). Such informal measures should "minimize or eliminate duplicative discovery and other pretrial proceedings." *In re 3M Co. Lava Ultimate Prods. Liab. Litig.*, 222 F. Supp. 3d 1347, 1348 (J.P.M.L. 2016). Movant has therefore failed to demonstrate that centralization under Section 1407 is necessary or appropriate.

**C.     If this Panel chooses to grant the Motion, the District of Colorado would be the best forum for consolidation.**

Should this Panel determine that transfer is appropriate, it should consolidate the cases before Chief Judge Philip A. Brimmer in the District of Colorado.  The Included Actions are scattered throughout the country in California, Texas, Colorado, and Florida (and the potential tag-along action is in Minnesota).  The District of Colorado would "provide[] a convenient and accessible forum for actions filed throughout the country."  *In re Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015).  Denver is centrally located with a major airport and has ample accommodations near the courthouse.  In addition, the District of Colorado is not currently overseeing any multi-district litigations, making it a good candidate for centralization.  *See Horizon*, 844 F. Supp. 2d at 1381 (centralization was appropriate in the Southern District of Florida because that district "[was] presiding over fewer MDL dockets than other proposed districts").  Further, as an experienced jurist with over 11 years of experience on the bench, Chief Judge Brimmer "has the experience to steer this litigation on a prudent course."  *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 49 F. Supp. 3d 1350, 1350 (J.P.M.L. 2014).

## V. CONCLUSION

For the foregoing reasons, Wells Fargo Bank respectfully requests that this Panel deny the Motion. If, however, the Panel concludes that transfer is warranted, it should consolidate the Included Actions before Chief Judge Brimmer in the District of Colorado.

Dated: June 24, 2020

Respectfully submitted,

By: /s/ Christopher M. Viapiano

Christopher M. Viapiano
(viapianoc@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Ave., N.W., Ste. 700
Washington, D.C. 20006
Telephone: (202) 956-6985
Facsimile: (202) 956-7056

*Attorney for Wells Fargo & Co., Wells Fargo Bank, N.A., Charles Scharf, and John Shrewsberry*