BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| IN RE: WELLS FARGO PAYCHECK PROTECTION PLAN LITIGATION | MDL No. 2954 |
|---|---|

**Plaintiff Seto Marselian's Partial Opposition to the Motion of Plaintiff DNM Contracting Inc. for Consolidation and Transfer Under 28 U.S.C. § 1407**

Plaintiff Seto Marselian, d/b/a Bistro Pazzo, in *Marselian v. Wells Fargo & Co.*, No. 3:20-cv-3166 (N.D. Cal.), respectfully submits the following partial opposition to the June 9, 2020 motion of plaintiff DNM Contracting Inc. ("DNM") to consolidate the Related Actions (identified in Docket. No. 2) and to transfer them to the Southern District of Texas for centralized pretrial proceedings under 28 U.S.C. § 1407:

- plaintiff Marselian supports coordination or consolidation of the Related Actions for pretrial proceedings under Section 1407(a), because they involve common questions of fact;

- plaintiff Marselian supports centralization in the Northern District of California, where defendant Wells Fargo & Company ("Wells Fargo") is headquartered, and where the *Marselian* action and the *Ma* action are pending;[1] and

- plaintiff Marselian opposes centralization in any other district, including the Southern District of Texas, because the Northern District of California is the most convenient forum for the parties and witnesses and is the best situated to ensure just and efficient conduct of the Related Actions.

---

[1] *Ma v. Wells Fargo & Co.*, No. 3:20-cv-3697 (N.D. Cal.), one of the eight Related Actions identified in Docket No. 2.

1

Accordingly, as discussed below, the Judicial Panel for Multidistrict Litigation (the "Panel") should enter an order:

(1) coordinating or consolidating the Related Actions for pretrial proceedings under Section 1407;

(2) transferring all Related Actions to the Northern District of California; and

(3) denying DNM's request to transfer any Related Actions to the Southern District of Texas.

## ARGUMENT

### I. Coordination or Consolidation Under Section 1407 Is Proper Because the Related Actions Involve Common Questions of Fact

Section 1407(a) permits coordination or consolidation of actions involving "common questions of fact" for centralized management of pretrial proceedings in a single district. *See* 28 U.S.C. § 1407(a). The Panel should order that separate cases in a multidistrict litigation ("MDL") be coordinated or consolidated for pretrial purposes, if doing so would (1) avoid the possibility of inconsistent or conflicting rulings; (2) "eliminate or reduce duplicative discovery"; and (3) "conserve the efforts and resources of the parties, their counsel, witnesses, and the judiciary." *In re Imagitas, Inc.*, 486 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007).

Here, the Related Actions — all nationwide class actions commenced barely two months apart — arose from the allegations that Wells Fargo violated the Coronavirus Aid, Relief, and Economic Security Act and its attendant regulations. *See, e.g.*, *Marselian* Compl. ¶¶ 2–24. Specifically, each of the Related Actions raises questions regarding Wells Fargo's failure to properly process loan applications by small-business owners for funding from the Paycheck Protection Program ("PPP"). Because the Related Actions involve common questions of fact, coordination or consolidation is proper under Section 1407(a).

## II. Centralization in the Northern District of California Is Proper Because Wells Fargo Is Headquartered in San Francisco, and Because Plaintiffs Assert Claims Under California State Law and Allege a California Sub-Class

Consideration of three undisputed facts weighs in favor of centralizing the pretrial proceedings in the Northern District of California. First, Wells Fargo is headquartered in San Francisco, where it was founded in 1852.[2] California is not only Wells Fargo's founding place, but also its nerve center. Of Wells Fargo's 5,300 bank branches across the United States, over 970 are located in California.[3] (By comparison, only about 580 Wells Fargo branches are located in Texas — where DNM filed its suit.)[4] Because the Related Actions arose from Wells Fargo's policies and practices emanating from its corporate headquarters in San Francisco, the Northern District of California is an "accessible forum, relatively close to potential witnesses and evidence." *In re Vizio, Inc., Consumer Privacy Litig.*, 176 F. Supp. 3d 1374, 1376 (J.P.M.L. 2016). Moreover, two of the Related Actions — the *Marselian* action and the *Ma* action — are already pending in the Northern District of California.

Second, in addition to asserting claims on behalf of a nationwide class of all PPP applicants, plaintiff Marselian asserts claims under California's consumer-protection statutes (*e.g.*, the California Consumer Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL")) on behalf of a subclass of small businesses residing in California. *See Marselian* Compl. ¶¶ 88, 96–102, 113–140. The other two Related Actions pending in the Central and Southern Districts of California also assert

---

[2] *History of Wells Fargo*, *available at* https://www.wellsfargo.com/about/corporate/history/ (last visited June 23, 2020).

[3] *ATM and Banking Locations*, *available at* https://www.wellsfargo.com/locator/ (last visited June 23, 2020).

[4] *Id.*

similar claims under California law. *See Karen's Custom* Compl. ¶¶ 67, 82–107 (alleging a California sub-class and asserting claims under the CLRA, UCL, and FAL); *BSJA* Compl. ¶¶ 55–81 (asserting claims under the UCL and FAL). In light of these important claims under California law and the existence of a California sub-class, centralization in the Northern District of California will promote the efficient conduct of this litigation. *See, e.g., In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1199, 1201 (D. Minn. 2012) (suggesting remand for cases raising unfair competition and unjust enrichment claims under laws of multiple states) (citing *In re Light Cigarettes Mktg. Sales Practices Litig.*, 832 F. Supp. 2d 74, 77–78 (D. Me. 2011) (suggesting for remand cases presenting "case-specific questions unique to the state law of the[] respective jurisdictions")).

Third, except for Texas, where two Related Actions are pending, the Northern District of California has the highest number of the Related Actions than any other district in this multidistrict litigation. *See* Dkt. No. 2 at 1–2. And each of the Related Actions — all filed between April and June 2020 — is in its infancy. No efficiency will be gained by transferring the Related Actions to the Southern District of Texas, which obtained jurisdiction over DNM's action through removal on May 22, 2020 — two weeks after plaintiff Marselian commenced his action in the Northern District of California.

In light of these facts, the Northern District of California is the most convenient forum for the efficient conduct of this multidistrict litigation. *See Vizio*, 176 F. Supp. 3d at 1376 (transferring all related actions to the Central District of California, where defendant was headquartered). In *In re Certainteed Corp. Roofing Shingle Products Liability Litigation*, for example, the Panel transferred all eight related actions to the district where a common defendant was headquartered and two of the eight related actions — all

4

nationwide class actions — were pending. *See* 474 F. Supp. 2d 1357, 1358 (J.P.M.L. 2007). The operative facts here — two of the eight Related Actions are already pending in the Northern District of California, where the common defendant, Wells Fargo, is headquartered — compel the same result. *See id.* The Panel should therefore order that all Related Actions be centralized for pretrial purposes in the Northern District of California.

### III. Centralization in the Southern District of Texas Would Be Improper Because That District Lacks Substantial Experience in Handling Complex MDL Actions

As demonstrated above, DNM does not — and cannot — meet its heavy burden to demonstrate that centralization in the Southern District of Texas is appropriate, in light of the fact that:

- Wells Fargo is headquartered in San Francisco;
- the claims involve California law and a California sub-class; and
- plaintiff Marselian commenced his action in the Northern District of California weeks before the Southern District of Texas obtained jurisdiction.

*See In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010) ("where only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization").

But consideration of additional factors further weighs in favor of the Northern District of California. Compared to the Southern District of Texas, the Northern District of California has much more experience in handling multidistrict litigation. According to the Panel's statistics, the judges in the Northern District of California have managed 120

MDLs.[5] Currently, 20 MDLs are pending in the Northern District of California.[6] By comparison, only one MDL is pending in the Southern District of Texas (before the Honorable Keith P. Ellison — not the Honorable Alfred H. Bennett, who is presiding over DNM's action).[7] The Northern District of California also has substantial experience in presiding over litigation involving Wells Fargo's business practices. In fact, just last year, the Northern District of California adjudicated *In re Wells Fargo & Co. Shareholder Derivative Litigation*, Lead Case No. 3:16-cv-5541 (N.D. Cal.), a shareholder derivative action arising from Wells Fargo's "fake-account" scandal, approving a massive settlement of $320 million.[8] The related securities-fraud class action against Wells Fargo, also adjudicated in the Northern District of California, was resolved in a $480 million settlement.[9]

These facts weigh heavily in favor of transferring all Related Actions to the Northern District of California. *See*, *e.g.*, *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 825 F. Supp. 2d 1357 (J.P.M.L. 2011) (favoring assignment "to an experienced transferee judge who is willing and able to receive the assignment"); *In re Wesson Oil Mktg. & Sales Practices Litig.*, 818 F. Supp. 2d 1383 (J.P.M.L. 2011) (favoring assignment to "an experienced transferee judge").

---

[5] *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf (last visited June 23, 2020).

[6] *Id.*

[7] *Id.*

[8] *See* Kevin LaCrois, *Massive Settlement in Wells Fargo Bogus Account Scandal Derivative Suit*, THE D&O DIARY, Mar. 3, 2019.

[9] *See Hefler v. Wells Fargo & Co.*, No. 3:16-cv-5479, Dkt. Nos. 234, 255 (N.D. Cal.).

## CONCLUSION

For the reasons set forth above, the Panel should enter an order pursuant to Section 1407 consolidating or coordinating for pretrial proceedings all Related Actions in the Northern District of California, San Francisco Division, before the Honorable Haywood S. Gilliam, Jr. The Panel should deny the motion to transfer the Related Actions to the Southern District of Texas.

Dated: June 24, 2020

Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
Albert Y. Chang
Yury A. Kolesnikov

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
Email: fbottini@bottinilaw.com
achang@bottinilaw.com
ykolesnikov@bottinilaw.com

*Attorneys for Plaintiff Seto Marselian in Marselian v. Wells Fargo & Co., No. 3:20-cv-3166 (N.D. Cal.)*